UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD A., JR.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 2:23-CV-361-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) for judicial review of Defendant's denial of his application for supplemental security income benefits ("SSI").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred when she failed to provide legally sufficient reasons for finding the opinions of Drs. Tasmyn Bowes, Psy.D., and Sonja Olson, M.D., unpersuasive. Had the ALJ properly considered these opinions, Plaintiff's residual functional capacity ("RFC") may have included additional limitations. The ALJ's errors

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

are, therefore, not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

## I. Factual and Procedural History

Plaintiff filed an application for SSI on August 20, 2019, alleging disability beginning August 20, 2019. Dkt. 7, Administrative Record ("AR") 71. After his application was denied at the initial level and on reconsideration, Plaintiff requested a hearing before an ALJ. AR 102, 107, 112. Plaintiff was represented by counsel at the hearing, which took place telephonically on January 10, 2022. AR 46–47. The ALJ issued an unfavorable decision on February 10, 2022, and the Appeals Council denied Plaintiff's request for review. AR 1, 12. Plaintiff then appealed to this Court. Dkt. 5.

## II. Standard of Review

When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court may set aside the denial of social security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Evidence is "substantial" when it is "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020)

(quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Accordingly, "[e]ven if the evidence is 'susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, ALJs must "set forth the reasoning behind [their] decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "A clear statement of the agency's reasoning is necessary because [the Court] can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.*

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

### III. Discussion

Plaintiff argues that the ALJ did not properly evaluate certain medical opinions in the record and failed to support her findings with substantial evidence. *See* Dkt. 9.

#### A. *Medical Opinion Evidence Standard*

The regulations regarding the evaluation of medical opinion evidence have been amended for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867–68, 5878–79 (Jan. 18, 2017). Because Plaintiff filed his claim after that date, the new regulations apply. *See* 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 3

finding(s). . . ." *Id.* §§ 404.1520c(a), 416.920c(a). Instead, ALJs must consider every medical opinion or prior administrative medical finding in the record and evaluate the persuasiveness of each one using specific factors. *Id.* §§ 404.1520c(a), 416.920c(a).

The two most important factors affecting an ALJ's determination of persuasiveness are the "supportability" and "consistency" of each opinion. *Id.* §§ 404.1520c(a), 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also* 20 C.F.R. § 416.920c(c)(1). An opinion is more "supportable," and thus more persuasive, when the source provides more relevant "objective medical evidence and supporting explanations" for their opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th 785 at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2). ALJs must articulate "how [they] considered the supportability and consistency factors for a medical source's medical opinions" when making their decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

B.  *Analysis*

The ALJ found that Plaintiff had the RFC to perform medium work except that he can have no exposure to hazards such as heights, dangerous machinery, and commercial driving; he can perform simple, routine tasks in a low stress environment (defined as no fast pace, no mechanized pace for producing product, no strict quotas, no strict production standards for time or quantity, and no frequent duty changes); he can engage in superficial interpersonal interactions with coworkers and supervisors (defined as no arbitration, negotiation, or

confrontation, but can ask questions, clarify instructions, gather information, and point or direct to where items may be placed); and he can have no interaction with the public as a job requirement. AR 20.

In determining Plaintiff's RFC, the ALJ considered the medical opinions of a state agency physician, Norman Staley, M.D., and of Plaintiff's treating physician, Sonja Olson, M.D., on Plaintiff's physical limitations. AR 25–28. Regarding his mental limitations, the ALJ considered the opinions of two state agency psychologists, Rita Flanagan, Ph.D., and Jon Anderson, Ph.D.; consultative psychological examiner April DeLira, M.D.; examining psychologist Tasmyn Bowes, Psy.D.; and Dr. Olson. AR 25–29. Plaintiff argues that the ALJ improperly rejected the opinions of Drs. Bowes and Olson. Dkt. 9.

1.   Tasmyn Bowes, Psy.D.

On October 29, 2019, Dr. Tasmyn Bowes performed a psychological evaluation of Plaintiff at the request of the Washington State Department of Social and Health Services. AR 723. She noted that Plaintiff presented as very oppositional, avoidant, and irritable during the evaluation. AR 724. His mental health symptoms included ongoing depressive symptoms, anxiety, difficulties with concentration, paranoia, and a "[p]ervasive history of criminal behavior—disregard for the rights of others, unstable moods and relationships, difficulty with authority figures, impulsive decision making, emotional outbursts, [and] poorly controlled anger." AR 725. Dr. Bowes diagnosed Plaintiff with post-traumatic stress disorder ("PTSD"), antisocial personality disorder, and alcohol disorder in reported sustained full remission. *Id.*

Although Dr. Bowes found only mild or moderate limitations in most categories of basic work activities, she found severe impairments in Plaintiff's ability to communicate, perform effectively, and maintain appropriate behavior in a work setting, and to complete a normal

workday and work week without interruptions from psychologically based symptoms. AR 726. She felt that these limitations were not primarily due to a substance use disorder. *Id.* She also noted that Plaintiff had a long history of aggressive behavior and that his personality disorder was not likely to respond to treatment. *Id.*

In the ALJ's written decision, she found Dr. Bowes' opinion to be "partially persuasive." AR 27. The ALJ stated that "parts of the opinion support a finding that the claimant had no more than moderate limitations in some areas of basic work activity[.]" *Id.* However, she found that "the part of the opinion that the claimant had severe limitations" was not consistent with Plaintiff's "more recent reports in the record" or "other mental status findings" including:

> being alert, polite, pleasant, engaged, and/or cooperative, logical and connected thoughts, fair hygiene or a well-groomed appearance, pleasant affect, logical and/or connected speech or clear speech, memory within normal limits, thought content without hallucinations, euthymic or normal mood, adequate eye contact, normal behavior, fair or normal judgment, fair insight, normal thought content, and [being] adequately dressed for the weather.

*Id.* The ALJ then noted that Dr. Bowes' opinion was "somewhat consistent" with Plaintiff's testimony and the opinions of Drs. DeLira and Olson but was not consistent with the opinions of the state agency psychologists. *Id.*

Plaintiff first argues that the ALJ did not adequately explain "how the limitations which she appeared to adopt were supported." Dkt. 9 at 4. After writing that Dr. Bowes' opinion was "partially persuasive," the ALJ's only reference to the piece of the opinion that she found persuasive was the comment that "parts of [Dr. Bowes'] opinion support a finding that the claimant had no more than moderate limitations in some areas of basic work activity[.]" AR 27. This circular statement does nothing to explain why the ALJ found this portion of the opinion persuasive.

Next, Plaintiff challenges the ALJ's conclusion that Dr. Bowes' endorsement of severe limitations was inconsistent with "other mental status findings" and "more recent reports in the record."[2] Dkt. 9 at 5–6. Plaintiff contends that the ALJ's finding of inconsistency is not supported by sufficient evidence and "reflects an improper 'cherry picking' of the record." *Id.* In her written decision, the ALJ incudes citations to numerous reports in the record in support of this inconsistency finding. AR 27. The cited records include a mix of normal and abnormal mental status findings, including encounters that took place after Dr. Bowes' evaluation. *See, e.g.*, AR 747 (poor insight into mental illness, thought process abnormalities, impaired attention, labile mood), 808 (reports of poor sleep, seeing and hearing things, horrible nightmares), 824–25 (logical and connected speech, euthymic mood, reports of poor sleep due to nightmares), 841–42 (dressed appropriately for the weather, fair hygiene, euthymic mood, somewhat disorganized thought process, reports of "headaches and seeing weird people"). The Commissioner argues that the abnormal mental status findings do not undermine the ALJ's conclusions because "[t]he question is not whether Plaintiff had psychological impairments or symptoms, but the degree to which they limit him." Dkt. 12 at 4.

Here, it is not clear how the mixed evidence in the record led the ALJ to accept some of Dr. Bowes' findings and reject others. Although the ALJ is responsible for resolving conflicts and ambiguities in medical evidence, the concurrent duty to set forth her reasoning in a way that allows for meaningful review requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-

---

[2] Although the ALJ's decision states that the severe limitations were not "*supported by* the claimant's more recent reports in the record discussed above or by other mental status findings," the comparison of Dr. Bowes' opinion to other medical sources in the record goes to the consistency factor, not supportability. *See Woods*, 32 F.4th 785 at 791–92.

1    DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022) (quoting *Blakes v. Barnhart*, 331

2    F.3d 565, 569 (7th Cir. 2003)).

3          Finally, Plaintiff argues that the ALJ's comment evaluating the consistency of Dr.

4    Bowes' opinion with the other medical opinions in the record and with Plaintiff's testimony,

5    though it "facially complied" with the requirement to articulate the ALJ's assessment of the

6    consistency factor, failed to explain how this factor affected the persuasiveness of Dr. Bowes'

7    opinion. Dkt. 9 at 8. Defendant responds that "the ALJ merely discussed the consistency of Dr.

8    Bowes's opinion with others; the ALJ did not state that she was discounting Dr. Bowes's opinion

9    as a result of that inconsistency. Instead, the ALJ simply acknowledged the degree to which the

10   opinion was and was not inconsistent with others in the record." Dkt. 12 at 5.

11         The Commissioner has precisely identified the problem: it is not enough to simply state

12   that an opinion is consistent or inconsistent with another opinion. *See Garrison v. Colvin*, 759

13   F.3d 995, 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion . . . while

14   doing nothing more than ignoring it, asserting without explanation that another medical opinion

15   is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis

16   for his conclusion."). Rather, the ALJ must "resolv[e] conflicts in medical testimony." *Ford*, 950

17   F.3d at 1149. This bare statement of comparison does not clarify the persuasiveness of Dr.

18   Bowes' opinion.

19         In sum, the Court concludes that the ALJ's failure to articulate how she considered the

20   supportability of Dr. Bowes' opinions and her reasoning for choosing to credit some sources

21   over others does not comply with the standards set forth in the new regulations. *See* 20 C.F.R. §§

22   404.1520c(b)(2), 416.920c(b)(2). Accordingly, the ALJ erred. This error was not harmless

23

24

because, had the ALJ been persuaded by Dr. Bowes' finding of severe limitations, the RFC may have included additional limitations regarding Plaintiff's capabilities in a work setting.

### 2. Sonja Olson, M.D.

#### a. Mental Assessment

On December 22, 2021, Dr. Sonja Olson completed an assessment of Plaintiff's mental RFC. AR 879–80. At that time, Dr. Olson had been Plaintiff's primary care provider for over five years. AR 874. She found severe limitations in Plaintiff's ability to: maintain attention and concentration for at least two straight hours with at least four such sessions in a workday, work in coordination with or proximity to others without being distracted, complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without unreasonable number and length of interruptions, interact appropriately with the general public or customers, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. AR 879–80. Dr. Olson also opined that there were marked limitations in Plaintiff's ability to understand, remember, and carry out detailed instructions that may or may not be repetitive; ask simple questions or request assistance from supervisors; respond appropriately to expected or unexpected changes to work setting and routine; and travel in unfamiliar settings and use public transportation. *Id.*

The ALJ wrote that she found Dr. Olson's opinion "not persuasive as she offered mental limitation which appeared to be outside of her specialist a family doctor [sic]." AR 28–29. The ALJ also noted, using identical language and citations as in her assessment of Dr. Bowes' opinion, that the opinion was not consistent with Plaintiff's more recent reports in the record or other mental status findings. AR 27, 29. The ALJ wrote that Dr. Olson's opinion was "somewhat

consistent" with Plaintiff's testimony, the opinions of Drs. DeLira and Bowes, and Dr. Olson's separate opinion on Plaintiff's physical limitations but was not consistent with the opinions of the state agency psychologists. AR 29.

Plaintiff argues that, although the regulations include specialization as one factor to consider when determining the persuasiveness of an opinion, medical providers are not restricted to giving opinions only in their areas of specialty. Dkt. 9 at 12. The new regulations provide that the opinion of "a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty" than that of a source who is not a specialist in this area. 20 C.F.R. §§ 404.1520c(c)(4), 416.920 c(c)(4). ALJs may, but are not required to, explain how they considered the source's specialization when articulating the persuasiveness of an opinion. *Id.* §§ 404.1520c(b)(2), 416.920 c(b)(2). Although a medical source's specialization is a relevant factor to the persuasiveness of their opinion, the supportability and consistency of the opinion remain the most important factors for the ALJ to consider, as well as the factors they must explain in their decision. *Id.* §§ 404.1520c(b)(2), 416.920 c(b)(2).

Here, it is not clear whether, as Plaintiff argues, the ALJ rejected Dr. Olson's opinion on Plaintiff's mental limitations solely because she was not a specialist in this area. But this reveals the underlying problem with the ALJ's treatment of this opinion: the ALJ did not set forth clear reasoning for rejecting it. As explained above, the ALJ's citations to mixed evidence in the record and bare comparison to other opinions in the record, without clarifying the effect on persuasiveness, do not provide an adequate explanation of the ALJ's reasoning. Again, this error was not harmless because, had the ALJ found Dr. Olson's opinion persuasive, the RFC may have included additional limitations regarding Plaintiff's capabilities in a work setting.

*b. Physical Assessment*

Dr. Olson also completed an assessment of Plaintiff's physical ability to perform work-related activities on December 22, 2021. AR 874. Dr. Olson opined that Plaintiff was not capable of performing even sedentary work and was unable to lift ten pounds or less due to a Bankart lesion in his left shoulder, right rotator cuff tear, and postural dizziness. *Id.* Dr. Olson noted restrictions in the type of environment in which Plaintiff could work because of his fear of heights and because "sounds trigger PTSD." AR 877. She stated that she would expect Plaintiff to miss work more than twice a month due to his physical health conditions. *Id.* Dr. Olson opined that she did not think Plaintiff could work at all due to his PTSD and shoulder condition, "even with pacing [and] breaks at this point." *Id.*

The ALJ found Dr. Olson's assessment "not persuasive." AR 28. She stated that Dr. Olson's "opinions were not well supported and failed to provide any specific reference to treatment records for dates of events, injuries, and objective findings or imaging." *Id.* The ALJ noted that Dr. Olson had "justified the physical limitations with notations of a shoulder dysfunction due to rotator cuff without additional details." *Id.* The ALJ wrote that Dr. Olson's opinion was conclusory and provided a legal decision reserved to the Commissioner. *Id.* The ALJ also noted that Dr. Olson's opinion was not consistent with the opinions of the state agency physicians or psychologists but was "somewhat consistent" with Plaintiff's testimony, the opinions of Drs. DeLira and Bowes, and Dr. Olson's separate opinion regarding Plaintiff's mental RFC. *Id.*

Although the ALJ specifically addressed the supportability of Dr. Olson's opinion on Plaintiff's physical limitations, she once again failed to articulate the effect of the consistency with other evidence on the opinion's persuasiveness. Again, this error was not harmless because,

had the ALJ found Dr. Olson's opinion persuasive, the RFC may have included additional limitations regarding Plaintiff's physical capabilities.

### IV. Conclusion

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, the Commissioner's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 30th day of October, 2023.

David W. Christel
Chief United States Magistrate Judge